IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL JOHNSON *o/b/o*, | ) | CASE NO. 5:12-CV-1449 |
| VIRGINIA JOHNSON | ) | |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| v. | ) | KENNETH S. McHARGH |
| | ) | |
| | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | MEMORANDUM OPINION & ORDER |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 13). The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Virginia Johnson's applications for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

## I. INTRODUCTION & PROCEDURAL HISTORY

On March 17, 2009, Virginia Johnson ("Johnson") protectively applied for a Period of Disability and Disability Insurance benefits as well as Supplemental Security Income benefits. (Tr. 163-67, 168-74). Johnson alleged she became disabled on February 28, 2007, due to suffering from hearing problems, panic attacks, migraines, depression, post traumatic stress disorder ("PTSD") and neck problems. (Tr. 185-86). Johnson's Disability Insurance benefits expired on December 31, 2008. (Tr. 182).

The Social Security Administration denied Johnson's applications on initial review on July 24, 2009.  (Tr. 117-19, 120-22).   Her applications were also denied upon reconsideration on December 17, 2009.  (Tr. 131-33, 134-36).   Thereafter, Johnson requested a hearing before an administrative law judge to contest the denial of her applications.   (Tr. 137-41).   The administration granted Plaintiff's request and scheduled a hearing.  (Tr. 142-57).

On January 12, 2011, Administrative Law Judge Hilton Miller (the "ALJ") convened a hearing to evaluate Plaintiff's applications.   (Tr. 40-69).   Johnson, represented by counsel, appeared and testified before the ALJ.  (*Id.*).  A vocational expert, Kevin Yee, also appeared and testified at the proceeding.  (*Id.*).

On January 20, 2011, the ALJ issued an unfavorable decision finding Johnson was not disabled.  (Tr. 22-34).   After applying the five-step sequential analysis,[1] the ALJ determined

---

[1]  The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. § 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1)    If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2)    If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3)    If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4)    If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5)    Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

Johnson retained the ability to perform work existing in significant numbers in the national economy.  (*Id.*).  Subsequently, Johnson requested review of the ALJ's decision from the Appeals Council of the Office of Disability Adjudication and Review.  (Tr. 17-18).  However, the council denied Johnson's request making the ALJ's decision the final decision of the Commissioner.  (Tr. 1-5).

Johnson passed away on May 26, 2011.  Her husband, Daniel Johnson, seeks judicial review of the ALJ's decision on behalf of his late wife.  Judicial review is proper pursuant to 42 U.S.C. § 405(g).

## II.  PERSONAL INFORMATION

Johnson, born on April 1, 1964, was 46 years old on the date of the hearing before the ALJ.  (Tr. 44, 113).  Accordingly, at all times, she was considered as a "younger person" for Social Security purposes.  *See* 20 C.F.R. §§ 416.963(c), 404.1563(c).  Johnson graduated from high school and completed one year of college, during which time she studied medical transcription.  (Tr. 45).  Johnson's past experience includes work as a medical transcriber and file clerk.  (Tr. 60).

## III.  ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in his application of the five-step analysis:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2.    The claimant has not engaged in substantial gainful activity since February 28, 2007, the alleged onset date.

3.    The claimant has the following severe impairments:  degenerative disc disease, cervical myelopathy, and an affective disorder.

4.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs and can never climb ladders, ropes, and scaffolds.  Additionally, the claimant is limited to simple, repetitive, and routine tasks in a static environment with low production quotas and minimal contact with the public and supervisors.

5.      The claimant is unable to perform any past relevant work.

. . .

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10.     The claimant has not been under a disability, as defined in the Social Security Act, from February 28, 2007, through the date of this decision.

(Tr. 22-34) (internal citations omitted).

## IV.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. §§ 404.1505, 416.905.

## V.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*,

4

745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI. ANALYSIS

Johnson asserts three assignments of error attacking the ALJ's decision. First, Johnson argues that the ALJ failed to properly evaluate the medical opinion evidence of record, specifically her treating physician and one-time examiners. Second, Johnson challenges the ALJ's reasons for discrediting her allegations. Finally, Johnson maintains that it was improper for the ALJ to rely upon the testimony provided by the vocational expert.

### A. Treating Source

When assessing the medical evidence contained within a claimant's file, it is well-established that an ALJ must give special attention to the findings of the claimant's treating

5

source.  *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  The treating source doctrine recognizes that physicians who have a long-standing treating relationship with an individual are better equipped to provide a complete picture of the individual's health and treatment history.  *Id.*; 20 C.F.R. §§ 404.1527(d)(2), 416.927(c)(2).  Under the Social Security Regulations, opinions from such physicians are entitled to controlling weight if the opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(d)(2), 416.927(c)(2).

The treating source's opinions are not entitled to such deference, however, if they are unsupported by the medical data in the record, or are inconsistent with the other substantial evidence in the record.  *See Miller v. Sec'y of Health & Human Servs.*, No. 91-1325, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (Table).  When the treating physician's opinions are not entitled to controlling weight, the ALJ must apply specific factors to determine how much weight to give the opinion.  *Wilson*, 378 F.3d at 544.  These factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, and the physician's specialization.  20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(c)(2)-(6).  The regulations also advise the ALJ to provide "good reasons" for the weight accorded to the treating source's opinion.  20 C.F.R. §§ 404.1527(d), 416.927(c)(2).  Regardless of how much weight is assigned to the treating physician's opinions, the ALJ retains the power to make the ultimate decision of whether the claimant is disabled.  *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992) (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)).

6

To begin, Johnson claims that the ALJ did not adhere to the treating source doctrine in his evaluation of the opinions offered by Dr. M. Terrance Simon.  On August 18, 2009, Dr. Simon assessed Plaintiff's ability to perform various physical work-related activities.  (Tr. 430-31).  Among other things, Dr. Simon indicated that Johnson was restricted to lifting no more than 10 pounds for a maximum of one-third of her workday.  The doctor also opined that Plaintiff could only stand or walk for a maximum of two hours each workday, and could not perform *any* sitting throughout the workday.  Dr. Simon indicated that these limitations were necessitated by Plaintiff's neck fusion, slipped disc, a recent fall, and chronic neck and back pain.[2]  On the back of the form, Dr. Simon also noted that Johnson could *never* climb, balance, stoop, crouch, or crawl.  He further noted that Johnson's impairments affected her ability to reach, handle, feel, push, pull, and hear, and that she would need to avoid environmental hazards in the workplace.  However, the doctor failed to respond to questions asking what medical findings supported the restrictions noted on the back of the form.

In his opinion, the ALJ held that Dr. Simon's opinion was only entitled to "very little weight." (Tr. 30).  The ALJ stated that the doctor's opinion was unsupported and inconsistent with the medical evidence of record.  The ALJ also stated that because "Dr. Simon had a treating relationship with the claimant, he likely relied upon the claimant's subjective complaints when rendering his opinion." (*Id.*).  However, the ALJ provided no other discussion of Dr. Simon's opinion.

---

[2] The parties alluded to the fact that there is some question as to whether Dr. Simon actually completed this entire report.  On the form, in response to the question, "What are the medical findings that support this assessment?", the response states, "neck fusion, slipped disc recently after falling [and] another accident *with my black lab*." (Tr. 430) (emphasis added).  Thus, the implication is that Johnson may have completed this form.  However, the ALJ did not raise this issue, nor does Defendant allege that it is dispositive of Dr. Simon's findings.  Thus, the undersigned will not address the issue.

7

Under the treating source rule, the ALJ was not at liberty to dismiss Dr. Simon's opinion merely because the ALJ deemed it was unsupported and inconsistent with other evidence in the record.  Instead, such a determination only signaled that the doctor's opinion was not deserving of controlling weight.  After making such a finding, the doctrine obligated the ALJ to provide "good reasons" for the weight assigned to the doctor's opinion.  Here, the only reason the ALJ provided for assigning Dr. Simon's opinion little weight was the ALJ's conclusion that Dr. Simon *must have* relied on Johnson's subjective complaints due to his treating relationship with her.  But, as Johnson correctly notes, the ALJ provided no proof that the doctor blindly relied upon Johnson's statements.

Usually, violations of this doctrine warrant remand. *See Wilson*, 378 F.3d at 546-47.  Yet, the Sixth Circuit has recognized circumstances under which the ALJ's failure to provide "good reasons" may be deemed harmless. *Id.* at 547.  There are three such instances which were explicitly addressed by the Sixth Circuit: (1) where the treating source's opinion was "so patently deficient that the Commissioner could not possibly credit it"; (2) where the ALJ adopts findings consistent with the source's opinion; or (3) whether the ALJ has "met the goal of § 1527(d)(2) – the provision of the procedural safeguard of reasons – even though she has not complied with the terms of the regulation." *Id.*

In the case *sub judice*, the ALJ's error was harmless because the ALJ's overall decision met the intended goal of the treating source doctrine, although the ALJ did not comply with the regulation in fact.  A reading of the ALJ's opinion demonstrates that the ALJ adequately considered Dr. Simon's findings, but discounted them because of their lack of support and inconsistency with other medical evidence of record.  While the ALJ did not expressly indicate so, the face of Dr. Simon's report is silent as to what findings support his conclusions though the

form requested such information.  In fact, the heading of the form conspicuously states, "IT IS IMPORTANT THAT YOU RELATE PARTICLAR MEDICAL FINDINGS TO ANY ASSESSED REDUCTION IN CAPACITY.  THE USEFULLNESS OF YOUR ASSESSMENT DEPENDS ON THE EXTENT TO WHICH YOU DO THIS."  (Tr. 430).  Thus, the omission of this information inherently weakened the import of Dr. Simon's findings and corroborates the ALJ's ruling that the opinion was unsupported.

In addition, the ALJ explicitly noted that just one month prior to Dr. Simon's assessment, state agency physician Dr. Gerald Klyop reviewed Plaintiff's medical record and concluded that Plaintiff was capable of performing light work. (Tr. 412-19).  In contrast to Dr. Simon's conclusions, Dr. Klyop opined Johnson was capable of standing, walking, and sitting for roughly six hours each workday.  Dr. Klyop also noted that Johnson retained an unlimited ability to push and pull, and specifically pointed out that Johnson was able to squat "without difficulty" – findings which differ from Dr. Simon's conclusion that Johnson could never stoop, only occasionally kneel, and that Johnson's impairments affected her ability to push and pull.  Dr. Klyop did review Plaintiff's records one month prior to Dr. Simon's assessment. Even so, Plaintiff points to no medical evidence or events between these two reviews to substantiate the severe limitations that quickly arose between the two exams and would subsequently make Dr. Klyop's report of less importance.

Finally, the ALJ's observations of Plaintiff at the hearing contradict Dr. Simon's report.  Despite Dr. Simon's indication that Plaintiff could not perform *any* sitting during the workday, Plaintiff was seating during the hearing and did not require breaks to alleviate physical pain.  This further affirms the ALJ's ruling that Dr. Simon's opinion was unsupported.  Therefore, the undersigned finds that the ALJ's analysis of Dr. Simon's opinion constituted harmless error.

### B.  Consultative Examiners

#### 1.  Dr. Michael Harvan

Johnson alleges that the ALJ improperly discredited consultative examining physician Dr. Michael Harvan's findings and failed to give adequate justification for the lesser weight he assigned.  Plaintiff's arguments are not well-taken.  Dr. Harvan examined Plaintiff on May 13, 2009 and diagnosed her with major depressive disorder. (Tr. 327-33).  He found that her ability to maintain attention to perform simple or multi-step, repetitive tasks was moderately impaired. (Tr. 333).  The doctor also noted her ability to relate to others, including fellow workers and supervisors, was moderately impaired. (*Id.*).  Finally, the doctor opined that Plaintiff's "ability to withstand stress and pressures associated with day-to-day work activity is markedly impaired. With proper therapy and medication, her symptoms should improve to the point of her being able to return to the work environment in the future." (*Id.*).  Despite these limitations, Dr. Harvan observed Plaintiff's conversation was of a normal rate, her thoughts were generally goal-oriented, her affect not constricted, and her remote long-term memory good. (Tr. 329, 331).

The ALJ gave Dr. Harvan's findings "appropriate weight," explaining that they were not entirely supported by the medical evidence of record. (Tr. 31).  Dr. Harvan is not a treating source, therefore, the good reasons rule under the treating source doctrine does not apply to his opinions. *See Kornecky v. Comm'r of Soc. Sec.,* 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[T]he regulation requiring an ALJ to provide good reasons for the weight given to a treating physician's opinion does not apply to an ALJ's failure to explain his favoring of one examining physician's opinion over another.").  Furthermore, it is well-established that opinions from medical professionals who have only examined the claimant on one occasion are not

automatically entitled to any special degree of deference. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

Moreover, the ALJ discussed state-examining physician Dr. Vicki Casterline's opinion, which supported the ALJ's decision to discount Dr. Harvan. (Tr. 31).   Dr. Casterline reviewed Plaintiff's file one month after Dr. Harvan's examination. (Tr. 334-37).  She expressly rejected Dr. Harvan's finding of marked limitations because it was not supported by objective mental findings and was inconsistent with Dr. Harvan's assigned Global Assessment Functioning ("GAF") score of 52.[3]  Finding no marked limitations, Dr. Casterline noted moderate limitations in the areas of sustained concentration and persistence, social interaction, and adaptation.  Taking these moderate limitations into account, Dr. Casterline concluded that Johnson retained the mental capacity to perform "routine job duties in a familiar setting with occasional, superficial contacts with others." (Tr. 336).  Contrary to Dr. Harvan, Dr. Casterline found Plaintiff capable of working, and the ALJ noted that in November 2009 state agency examiner Dr. Cynthia Waggoner reviewed Dr. Casterline's report and affirmed it in total. (Tr. 31, 459).

Plaintiff incorrectly asserts that Dr. Casterline's conclusion conflicts with the ALJ's residual functional capacity ("RFC") finding.  The RFC provided that Plaintiff could perform jobs involving simple, repetitive, and routine tasks with low production quotas and minimal contact with the public and supervisors. (Tr. 27).  These limitations fully encompassed Dr. Casterline's recommendation of "routine job duties in a familiar setting with occasional,

---

[3] The GAF scale rates an individual's overall psychological functioning from 0 for inadequate information to 100 for superior functioning. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 n.7 (6th Cir. 2006).  A GAF in the range of 51-60 indicates moderate symptoms (like flat affect, circumstantial speech, or occasional panic attacks) *or* moderate difficulty in social or occupational functioning (such as few friends or conflicts with co-workers).

superficial contacts with others." (Tr. 336).  As Defendant notes, the adopted RFC was even
more limiting than Dr. Casterline's recommendation.

### 2.  Dr. Murrell Henderson

Johnson also maintains that the ALJ erred by assigning "great weight" to one-time
examiner Dr. Murrell Henderson's opinion but then adopting an RFC that did not comport with
the doctor's findings.  Dr. Henderson performed a physical examination of Plaintiff in July 2009
and noted that she demonstrated a satisfactory range of motion, strength in her spine, and
extremities. (Tr. 354).   He concluded that Plaintiff "possibly could tolerate light physical
activities or possibly sedentary work." (*Id.*).  Plaintiff argues that Dr. Henderson's finding of
"light activities" did not mean that the doctor thought she was able to perform what is defined by
the Social Security Regulations as "light work."

Although the phrasing used by Dr. Henderson was ambiguous, to remand on this ground
would be futile.  "No principle of administrative law or common sense requires us to remand a
case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a
different result." *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir. 2005) (quoting *Fisher v.
Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)); *Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171,
173 (6th Cir. 2004).  Dr. Henderson concluded that Plaintiff could perform sedentary work, if not
light work.  The VE identified three jobs at the sedentary level:  final assembler, sample tester,
and electronic assembler/inspector. (Tr. 62-64).   Additionally, the ALJ relied on Dr. Klyop's
conclusion that Plaintiff was capable of performing light work, which further supports the RFC
finding. (Tr. 418).  As a result, remand on this issue is unnecessary.

Lastly, Plaintiff asserts it was improper for the ALJ to give greater weight to the opinions
of her non-examining physicians than to those of her one-time examiners.  Generally, more

12

weight is given to the opinions of examining medical sources than to non-examining medical sources. 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1).  Even so, the Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are "highly qualified" and are "experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  In addition, when determining the weight to attribute to a medical source, the ALJ may take into account various factors, including whether the opinion is supported by medical signs and laboratory findings and the consistency of the opinion with the record as a whole. 20 C.F.R. §§ 404.1527, 416.927(c).  Thus, the ALJ properly accorded significant weight to the opinions of state examiners Dr. Klypo and Dr. Casterline. Furthermore, Dr. Klypo and Dr. Casterline pointed out that examining physicians Dr. Henderson and Dr. Harvan's conclusions were not entirely supported by objective medical findings, which served as reasonable grounds for the ALJ to discredit the examining physicians' opinions. (Tr. 418, 336).  The ALJ's reliance on the state examiners' reviews was not in error, and moreover, their medical opinions are sufficient to carry the ALJ's ruling.

### C.  Credibility Assessment

It is the ALJ's responsibility to make decisions regarding the credibility of witnesses. "An ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since [the] ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)).  Notwithstanding, the ALJ's credibility finding must be supported by substantial evidence, *Walters*, 127 F.3d at 531, as the ALJ is "not free to make credibility determinations based solely upon an 'intangible or

13

intuitive notion about an individual's credibility.' " *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

The Sixth Circuit follows a two-step process in the evaluation of a claimant's subjective complaints of disabling pain. 20 C.F.R. §§ 416.929(a), 404.1529(a); *Rogers,* 486 F.3d at 247; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853-54 (6th Cir. 1986); *Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994).  First, the ALJ must determine whether the claimant has an underlying medically determinable impairment which could reasonably be expected to produce the claimant's symptoms.  *Rogers,* 486 F.3d at 247.  Second, if such an impairment exists, then the ALJ must evaluate the intensity, persistence and limiting effects of the symptoms on the claimant's ability to work. *Id.*  The ALJ should consider the following factors in evaluating the claimant's symptoms:  the claimant's daily activities; the location, duration, frequency and intensity of the claimant's symptoms; any precipitating or aggravating factors; the type, dosage, effectiveness and side effects of any medication taken to alleviate the symptoms; treatment, other than medication, the claimant receives to relieve the pain; measures used by the claimant to relieve the symptoms; and statements from the claimant and the claimant's treating and examining physicians.  *Id.*; *see Felisky*, 35 F.3d at 1039-40; SSR 96-7p.

In the present case, Johnson alleges that the ALJ erred in analyzing her credibility.  She maintains that the ALJ did not consider the factors set forth in SSR 96-7p in light of her testimony.  Further, Plaintiff alleges that the remedial nature of the Social Security Act requires a different credibility analysis than the ALJ performed.  Johnson cites to *Houston v. Secretary of Health and Human Services* in support of this proposition, but does not elaborate on how exactly the ALJ allegedly deviated in his analysis. *See Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 371 (6th Cir. 1984) (Weik, J. dissenting).

14

Plaintiff's arguments are not well-taken. Plaintiff correctly notes that the dissent in *Houston* explains that the Social Security Act is "remedial in nature" and meant to be construed liberally. (*Id.*).  However, regardless of this principle of interpretation, the Sixth Circuit found the ALJ appropriately relied on medical evidence, such as the effects of medication, to discredit Houston's allegations of pain (*Id.* at 367), which is how the ALJ proceeded in this case.  Plaintiff does not point to case law showing that the ALJ's analysis of Plaintiff's credibility was at fault. The ALJ properly applied the two-part test and at step two concluded that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not credible to the extent that they were inconsistent with the record.  During his analysis the ALJ took into account Plaintiff's testimony, including her neck pain, pain radiating down her arms, pain and numbness in her hands, and depression. (Tr. 47-48, 50, 53).  The ALJ gave several valid reasons for discrediting Johnson's allegations in accordance with SSR 96-7p and in light of her testimony.

To begin, the ALJ noted that Plaintiff's daily activities did not comport with the alleged severity of her impairments.  The ALJ explained that in a psychological exam with Dr. Harvan, Johnson said she tried to clean, did laundry, washed dishes, dusted furniture, and gardened. (Tr. 332).  Her hobbies included playing with her dog. (*Id.*).  The ALJ also stated that despite Plaintiff's testimony that she rarely drove, she reported to Dr. Henderson that she was able to drive. (Tr. 353).  Though Johnson argues that the ALJ improperly used her daily activities to discredit her, SSR 96-7p lists an individual's daily activity as one of the factors that the ALJ should consider when evaluating credibility. SSR 96-7p, 1996 WLJ 374186 at *3; *see also Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) ("As a matter of law, an ALJ may consider household and social activities in evaluating complaints of disabling pain.").  Moreover, this was not the sole reason the ALJ did not fully credit Plaintiff.

15

The ALJ also noted that objective medical findings did not support Plaintiff's allegations of pain.  In his decision, the ALJ explained that physical examinations showed Johnson had good use of her arms and was able to move around in a normal manner. (Tr. 32).  The ALJ referred to Johnson's examination with Dr. Henderson which revealed she had a satisfactory range of motion in her arms and legs and was able to squat without difficulty. (Tr. 29, 354).  The ALJ also relied on Dr. Klyop who indicated Plaintiff could perform light work and noted that Plaintiff's statements were only partially consistent with medical evidence, particularly her complaint of lost arm strength, because her strength was noted as 5/5. (Tr. 417-18).  The ALJ pointed out that during her hearing, Johnson said she had difficulty gripping, but her July 2009 physical exam with Dr. Henderson showed no difficulty. (Tr. 355-56).  Though the July 2009 exam has limited probative value to explain Johnson's abilities at the time of the hearing, it shows that during the relevant period of alleged disability, she had no problems with her hands.

Finally, the ALJ observed that Plaintiff's mental health improved with medication and psychological treatment as documented by Dr. Thomas Shemory's treatment notes spanning from August 2009 to December 2010.  The ALJ pointed to Dr. Shemory's September and November 2009 records, which both state that Plaintiff's depression improved after she began new medication. (Tr. 440, 467).  Dr. Shemory also described Johnson as pleasant and conversant in September and less tearful in November.

In sum, the ALJ took sufficient evidence into consideration when making his credibility determination.  Plaintiff carries the burden to show that substantial evidence did not support the ALJ's decision.  An ALJ's ruling must stand so long as it is supported by substantial evidence, even though substantial evidence might also support a difference conclusion. *Mullen v. Bowen,*

800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).  Plaintiff has failed to carry her burden, and as a result, the undersigned must affirm.

### C.  Step-Five Finding

When an ALJ elicits vocational expert's testimony concerning the availability of suitable work in response to a hypothetical question that accurately sets forth the plaintiff's impairments, that testimony may constitute substantial evidence. *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) (citing *Varley v. Sec'y of HHS*, 820 F.2d 777, 779 (6th Cir. 1987)).

Here, Plaintiff alleges that the ALJ's step-five finding was in error because the hypothetical question the ALJ posed to the VE did not properly account for her limitations.  The ALJ characterized Johnson's physical impairments to the VE as limiting her to light work, except that Johnson could frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, and could never climb ladders, ropes, and scaffolds. (Tr. 60).  The ALJ described Johnson's mental impairments as limiting her to jobs with simple, repetitive, and routine tasks in a static environment with low production quotas and minimal contact with the public and supervisors. (*Id.*).  The ALJ then asked the VE whether Johnson could perform jobs existing in significant numbers in the national economy despite her impairments.  The VE identified three such jobs: housekeeper/cleaner, office helper, and cafeteria attendant. (Tr. 61).

Beginning with her physical limitations, Johnson disputes that she is capable of light work.  Johnson notes Dr. Simon's opinion limiting her to less than sedentary work.  The ALJ discounted Dr. Simon's findings, and thus was not required to include them in the step-five analysis.  When posing a hypothetical question to a VE, the ALJ is only required to incorporate those limitations he finds "credible." *See Infantado v. Astrue*, 263 Fed. App'x. 469, 477 (6th Cir. 2008) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).  In

17

addition, Johnson argues that Dr. Henderson's report found her capable of "light physical activity," not light work.  Any error on the ALJ's part in interpreting Dr. Henderson's report does not warrant remand, because Dr. Henderson found Johnson capable of sedentary work and the VE identified jobs.  Moreover, the ALJ relied on the state agency physician Dr. Klypo's assessment that Johnson could perform light work and this assessment serves as sufficient evidence to support the RFC.

Plaintiff further alleges that the ALJ did not include limitations to reflect her small stature of 4'11" and 90 pounds.  Nothing indicates that the ALJ failed to give adequate attention to Plaintiff's physical stature.  Johnson's size was recorded in the medical records the ALJ consulted, including those written by Dr. Klyop (Tr. 413) and Dr. Henderson (Tr. 354), and the ALJ observed Johnson during the hearing.  The ALJ did not find limitations due to Johnson's stature necessary, and she points to no evidence showing that she required additional limitations.

Next, Johnson maintains that the ALJ failed to include sufficient limitations regarding her mental abilities.  She points to Dr. Harvan's opinion that she had marked limitations in her ability to withstand stress and pressures associated with work.  Because the ALJ discounted Dr. Harvan's finding of marked limitations, he was not bound to include it in his hypothetical question to the VE.

Plaintiff also argues that the ALJ failed to include a limitation based on her ability to stay focused during the workday.  However, the ALJ recognized this limitation and found Plaintiff to have "moderate difficulties with respect to concentration, persistence, or pace." (Tr. 26).  His hypothetical question restricted her to "simple, repetitive, and routine [tasks] with low production quotas . . . in a static environment." (Tr. 60).  In *Black v. Commissioner of Social Security*, this Court held that an ALJ's hypothetical question accounts for moderate limitations in

18

concentration, persistence, or pace when it limits the claimant to "simple, routine, and repetitive tasks performed in a work environment free of fast paced production requirements, involving only simple, work-related decisions, and routine workplace changes." *Black v. Comm'r of Soc. Sec.*, 5:11-CV-2770, 2012 WL 4506018 at *14 (N.D. Ohio Sept. 28, 2010); *see also* *Jackson v. Comm'r of Soc. Sec.*, 1:10-CV-763, 2011 WL 4943966 at *4 (N.D. Ohio Oct. 18, 2011) (Absent Plaintiff providing evidence suggesting additional speed- or pace-based restrictions were required, a hypothetical limited to "simple, routine tasks" was adequate to describe moderate difficulties with concentration, persistence, and pace.).  Thus, the limitations set out in the controlling hypothetical sufficiently encompassed Johnson's moderate concentration limitations, and she does not provide evidence suggesting additional restrictions regarding her ability to focus were necessary.

Johnson also alleges the ALJ failed to consider that she may not have regular attendance, but she references no doctor making this finding.  As a result, the ALJ was not required to incorporate Johnson's unsupported claim in his hypothetical question.  The Sixth Circuit recognizes that "[i]f the [ALJ's] hypothetical question has support in the record, it need not reflect the claimant's unsubstantiated complaints." *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (citing *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987)).  As evidence of the need for additional limitations, Johnson points to the break in her oral hearing which was taken so that she could compose herself, along with Dr. Simon and Dr. Shemory noting her depression and prescribing medication.  Johnson references no case law showing that her actions at the oral hearing are sufficient to establish any alleged limitation, and she points to no record of Dr. Simon or Shemory recommending limitations based on her mental state.  The burden of proof lies with the plaintiff to prove

19

disability.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004).  Johnson has not pointed to record evidence showing that she required greater medically prescribed limitations than those found by the ALJ and included in his hypothetical question. Therefore, the undersigned finds that substantial evidence supports the ALJ's step-five finding.

VII.    DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the Court AFFIRMS the decision of the Commissioner.

IT IS SO ORDERED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date:  September 25, 2013.

20